UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ABIDAN F. MUHAMMAD,

                                    Plaintiff,            DECISION and ORDER

            -vs-                                          10-CV-6074-CJS

WAL-MART STORES EAST, L.P.,

                                    Defendant.

APPEARANCES

For Plaintiff:          Christina A. Agola, Esq.
                        Steven LaPrade, Esq.
                        Christina A. Agola, PLLC
                        1415 Monroe Avenue
                        Rochester, New York 14618

For Defendant:          Michael S. Hanan, Esq.
                        Fox Rothschild LLP
                        997 Lenox Drive, Bld. 3
                        Lawrenceville, New Jersey 08648

INTRODUCTION

        This was an action for employment discrimination under the Americans With
Disabilities Act and Title VII.  Now before the Court is the Court's *sua sponte* Order to Show
Cause directing Plaintiff's attorney, Christina Agola, to show cause why she should not be
sanctioned for making misrepresentations to the Court.  As set forth below, Ms. Agola is
sanctioned.

1

The underlying facts of this action were set forth in the Court's prior Decision and Order (Docket No. [#30]). The Court will only restate those facts which pertain to the Order to Show Cause.

Plaintiff Abidan Muhammad is a male who identifies his race as "black."[1] Plaintiff was employed by Defendant Wal-Mart for only seven months, including two months spent on medical leave. Plaintiff was hired as an Overnight Deli Stocker. In June 2008, Plaintiff experienced pain in his hands. On July 12, 2008, Plaintiff requested an initial one-month leave of absence for carpel tunnel syndrome, which Defendant granted. On July 14, 2008, Plaintiff completed an application for worker's compensation benefits. After Plaintiff's initial medical leave expired, Defendant granted him two additional extensions of medical leave.

On September 10, 2008, Plaintiff returned to work, with a doctor's note stating: "[Plaintiff] may not do repetitive use of hands and may not lift [greater than] 25 pounds...these restrictions will last until October 1st, 2008." In response to the doctor's note, Defendant assigned Plaintiff to the position of Greeter during his usual overnight hours. As the title implies, a Wal-Mart Greeter's primary duty is to welcome customers as they enter the store.

There was already another employee, Shanelle Cherry ("Cherry"), who was working as a Greeter due to her own medical restrictions. Plaintiff and Cherry both worked as Greeters at the same time. Occasionally, though, both were required to perform "re-shops," which involved taking returned or otherwise un-purchased merchandise from the front of the

---

[1]Pl. Deposition at 260.

store and returning it to the store's shelves, at their own pace. The exact number of times that Plaintiff actually performed re-shops is unclear, but it appears it was infrequent, and in any event, he worked as a Greeter a maximum of only twenty days. *See*, Def. Summary Judgment Motion [#22], Ex. M at p. 18 ("I had been assigned to the front door as a greeter. *Sometimes* they would have me do reshops *sometimes*." [sic]) (emphasis added). [2]

When performing his re-shopping duties, if Plaintiff came across an item which weighed more than 25 pounds, he simply "just didn't lift it" and left it in the cart. Plaintiff never violated his lifting restriction, and was never disciplined for failing to re-shelve heavy items. Plaintiff maintained, though, as part of this action, that re-shelving items generally violated his doctor's restriction on repetitive use of hands. In that regard, Plaintiff claimed that he twice told his supervisors that re-shelving items violated his repetitive-use limitation. However, Plaintiff's prior sworn testimony on this point suggested that he did not expressly complain to anyone about repetitive motion. In any event, Plaintiff was able to perform his re-shopping duties, and did not suffer any ill effects from doing so.[3]

September 30, 2008 was the last day that Plaintiff worked for Defendant. Plaintiff arrived at work at 10 p.m. and punched in, using his magnetic name badge, in the usual manner. When Plaintiff arrived at the Greeter's station, Cherry said that she was surprised to see him, since she had heard a rumor that he had been fired. Plaintiff advised Cherry that he had not been fired. At 11:45 p.m., Plaintiff took a 15-minute break, during which he

---

[2]Plaintiff argued that his deposition, at pp. 129-130, established that he was "frequently" assigned to do re-shops. See, Pl. Memo of Law [#26] at p. 7. However, the record did not support such an inference.

[3]Apart from the conclusory statement in the Complaint that working "caused [his] preexisting injury to become more exastribated [sic] than usual." Complaint [#1], ¶ 19.

tried to access Wal-Mart's intranet system to request a transfer to a different store, purportedly because he no longer felt comfortable at the Chili Ave. location. Employees were entitled to access the intranet system on their breaks for that purpose. Plaintiff tried to log onto the intranet three times, but according to him, he could not log on because the system did not recognize him as being "clocked in" that evening. Plaintiff maintains that he attempted to again swipe his identification card to "punch in," but the system did not accept his card.

Immediately thereafter, while still on his break, Plaintiff approached Assistant Manager Frank Henry ("Henry"). Plaintiff did so, since he was concerned about the status of his employment, based on Cherry's comment about him being fired, and based upon the fact that his identification badge did not seem to be functioning. Henry, who was standing and talking with Assistant Manager Dan Berner ("Berner") and Support Manager Frank Costello ("Costello") by the cash registers when Plaintiff approached, stepped aside to talk with Plaintiff. Plaintiff asked Henry if he was fired, to which Henry responded, "not to my knowledge." Plaintiff then asked why his badge did not seem to be working. Henry indicated that he did not know why Plaintiff's badge was not working, and said that he would "look into that." At that point, it was a few minutes before midnight, and Henry told Plaintiff that he should return to work because his break was over.

Plaintiff returned to his Greeter's post for approximately one minute, then walked back to where Henry was still speaking with Berner and Costello. An exchange followed, which, significantly, was captured on the store's video cameras, and was submitted to the Court as Exhibit J to Defendant's motion. The video file did not provide sound, but Plaintiff testified at deposition concerning what was said.

The video showed Plaintiff briskly approaching Henry from behind, while Henry was still speaking with Berner and Costello.  Plaintiff threw his identification badge and lanyard to floor, and exclaimed, "This shit don't work!"  This abrupt interruption caused Henry to turn quickly and retreat several steps from Plaintiff, who is much larger physically than Henry. Plaintiff pursued and stood directly in front of Henry in a confrontational manner.  Plaintiff admitted that he was upset because he felt that Henry had acted dismissively toward him in their prior conversation.  As Plaintiff was confronting Henry, Berner yelled "Abidan, back off!", but Plaintiff yelled, "No. You back off!" while pointing at Berner.  Plaintiff walked away a few steps, then returned and stood directly in front of Berner and said, "My name is Abidan...I'm a man...I'm a grown man. You want to talk to me like a grown man...I'm tired of the way y'all treat people around here."  Plaintiff also accused store officials of "trying to play him."  Berner then told Plaintiff to leave the store,  to which Plaintiff replied, "I said what I had to say, I'm out of here," and left the store.  The incident took place at the front of the store, during business hours, with customers nearby.

Earlier that evening, another incident had occurred at the store, involving a black female associate named Chastity Travis.  As Travis was arriving at the store for her shift, she and her boyfriend were standing outside, when the boyfriend suddenly shoved her, knocking her through the store's door.  A store employee observed that, after Travis got up from the ground, she and her boyfriend yelled profanities at each other, and each called the police to complain about the other.  Travis' boyfriend had a welt and blood on his face, though it is unclear how he became injured.  Store management provided police with videotape of the incident, which did not show any physical altercation leading up to Travis being shoved through the door.  Defendant did not take any disciplinary action against

Travis for violating the store's anti-violence policy, because it viewed her as being the victim of domestic violence.

On October 7, 2008, Wal-Mart notified Plaintiff that he was being terminated for violating the company's workplace violence policy, by intimidating, yelling at, and attempting to bully his supervisors.

On October 27, 2008, Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR"), which was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). The complaint alleged that Defendant fired Plaintiff because of his race and disability, and failed to accommodate him. With regard to race, Plaintiff stated, in pertinent part: "No black people in senior management position that could be sensitive to the needs of black employees. . . . Intimidating all of the minority associates[.] [They] told me they were intimated by me." As for disability, Plaintiff wrote, in pertinent part: "Suffer from carpal tunnel syndrome, diabetes and hypertension still made to violate doctor's orders no repetitive motion made to do reshops in store." [sic]

The NYSDHR complaint further stated: "I was terminated for voicing my opinion in a loud voice." When asked to explain why he believed that he was discriminated against, Plaintiff gave two examples. First, he stated that a female employee, Travis, had been involved in a physical altercation with her boyfriend on Wal-Mart property, and was suspended but not terminated. Second, Plaintiff indicated that Berner had raised his voice to him when telling him to "back off" from Henry, but Berner had not been disciplined. On April 24, 2009, NYSDHR issued a "No Probable Cause" determination, dismissing Plaintiff's claims.

On September 18, 2009, Plaintiff filed a complaint with the Workers' Compensation

6

Board ("WCB"), alleging that he was terminated in retaliation for filing a Workers' Compensation claim. On July 16, 2010, following a trial, the WCB Judge dismissed the complaint, finding that Plaintiff's "angry confrontation" with his supervisors provided an adequate reason to fire him. Plaintiff appealed, and on December 14, 2010, a WCB Panel upheld the dismissal, finding that Plaintiff had not produced "any evidence" that he was terminated by Defendant in retaliation for filing for workers' compensation benefits.

On February 10, 2010, Plaintiff, proceeding *pro se*, filed the instant action. The Complaint [#1] indicated that Plaintiff was suing pursuant to Title VII and the ADA. On the form complaint, Plaintiff checked lines indicating that the discrimination involved Defendant terminating his employment, failing to accommodate him, and retaliating against him. Although Plaintiff had checked the box for Title VII and ADA, the only factual allegations in the Complaint pertain to Plaintiff's alleged disability. Specifically, when asked to briefly state the facts of his claim, Plaintiff wrote: "Was forced to work in a position of which continually caused my preexisting injury to become more exa[cerbated] than usual." Complaint [#1] ¶ 19. Attached to the complaint is a document entitled "Notice of intent to sue for discrimination," which, again, mentions only Plaintiff's alleged disability, and states, in pertinent part:

> The claim is founded in negligence on the part of the Wal-Mart Corp. for discrimination. Claimant states that the Wal-Mart Corp. did in fact not provide the claimant with reasonable accommodations for an injury sustained in the plaintiff's employment capacity pursuant *to Title VII of the Americans with Disability Act* of whom acted in a Discriminatory manner against the Claimant by not adhering to the ADA. The policy was being applied arbitrarily, in refusing to follow the ADA. The plaintiff also alleges that the Wal-Mart Corp. was discriminatory with respect to the New York Executive Law and the City's Administrative Code.

Complaint, Docket [#1] at p. 6 (emphasis added). Clearly absent from the Complaint is any factual allegation of discrimination based on race, sex, religion or any other factor. In fact, on the form complaint that Plaintiff used, which provided lines for litigants to indicate the basis for their discrimination claim, he marked the line for "disability," but left the lines for "race," "color," "sex" and "religion" blank. Complaint [#1] at ¶ 14. Moreover, the NYSDHR complaint that Plaintiff had filed on October 27, 2008 was not attached to the Complaint [#1].

One month after Plaintiff commenced this action, and prior to Defendant being served, attorney Christina Agola appeared on Plaintiff's behalf.[4] Ms. Agola never sought to amend Mr. Muhammad's *pro se* Complaint, even though a pre-trial scheduling order gave her five months to do so. *See*, Scheduling Order [#16] (Granting parties until August 23, 2010 to file motions to amend pleadings.). Accordingly, the *pro se* -drafted Complaint [#1], which Ms. Agola adopted and chose to proceed on, is the operative pleading in this action.[5]

The parties then conducted pretrial discovery. At his deposition, Plaintiff expressed his belief that Defendant had discriminated against him in a variety of ways that were not discussed in the Complaint. Afterward, though, Ms. Agola did not attempt to amend the Complaint to include any of the matters about which her client testified.

Following the completion of discovery, Defendant filed a motion for summary

---

[4]Ms. Agola filed her Notice of Appearance [#5] on March 15, 2010. Defendant was not served until March 27, 2010. See, Docket No. [#6]. Ms. Agola purportedly agreed to represent Plaintiff *pro bono*.

[5]*See, Hanna v. Brown*, 93 C 3105, 1995 WL 103789 at * 2 (N.D.Ill. Mar. 6, 1995) ("[O]nce [plaintiff] retained an attorney, his original *pro se* status no longer entitled him to a liberal interpretation of his pleadings. Although plaintiff initiated the complaint to the MSPB *pro se*, counsel could and should have added the charge of racial discrimination by amending the complaint, filing a post hearing pleading, or by alleging racial discrimination in the subsequent EEOC charge."). The Court can only assume that in deciding whether to take Plaintiff's case, Ms. Agola reviewed the Complaint that had already been filed in this Court. Since she made no attempt to amend the Complaint, the Court further assumes that she believed it accurately set forth Plaintiff's claim against Defendant.

judgment, which naturally focused on Plaintiff's disability claim. Defendant also addressed a potential race discrimination claim, apparently because Plaintiff had checked a box for "Title VII" discrimination on the form complaint, and because during his deposition he claimed to have been discriminated against on the basis of his race. See, Def. Memo of Law [#22-2] at p. 8. As mentioned already, however, the Complaint contained no factual allegations of racial discrimination, and the line marked "race" was left blank.

In opposition to Defendant's motion, Agola began, disingenuously,[6] by arguing that although Defendant had not addressed it, Plaintiff had a meritorious *gender* discrimination claim: "Plaintiff has sufficiently established a claim for discrimination on the basis of gender in violation of Title VII." Pl. Memo of Law [#26] at p. 2. In spite of the facts set forth above, Ms. Agola argued that Plaintiff had "clearly" pleaded a gender discrimination claim. *See id*. at 3 ("Plaintiff has *clearly* also alleged discrimination based on gender.") (emphasis added). Ms. Agola stated that it was "unclear" why Defendant would think Plaintiff had *not* pleaded a gender discrimination claim, "since neither the Complaint, nor any other evidence/testimony in this case, have so *limited* the ground(s) upon which Plaintiff seeks relief under Title VII." *Id*. at 2 (emphasis added). In that regard, Ms. Agola seemed to make the novel and meritless argument that, although the Complaint did not plead a gender discrimination claim, Plaintiff could nonetheless pursue such a claim, or any possible claim under Title VII, as long as the Complaint did not "limit" or exclude it, since the "Title VII" box was checked on the form complaint. Ms. Agola further contended that Plaintiff could pursue

---

[6]This frivolous argument perhaps resulted after it became evident that the actual theory pleaded, *i.e.* disability discrimination, had no merit. Such a move, while disingenuous, might have at least made some sense if Plaintiff actually had a meritorious but unpleaded gender discrimination claim. However, as the Court explained in its prior Decision and Order [#30], there was no colorable gender discrimination claim, which makes Ms. Agola's attempt to use such a claim to avoid summary judgment all the more meritless.

such claim because he claimed, *at his deposition*, to have suffered gender discrimination in relation to the treatment that Travis received,[7] even though she never sought to amend the Complaint to include a gender discrimination claim. *Id*.[8]

On August 2, 2012, the Court issued a Decision and Order [#30], granting summary judgment on the merits, and ordering Agola to show cause why she should not be sanctioned. On that point, the Court wrote, in pertinent part:

*Plaintiff's Attempt to Raise Unpleaded Claims at Summary Judgment Stage*

As discussed above, the only claim that is arguably pleaded in the Complaint [#1] is that Defendant discriminated and retaliated against Plaintiff because of a disability. In attempting to defeat summary judgment, Plaintiff is now attempting to raise claims and instances of discrimination based on race, sex, and even religion. This attempt must fail. *See, Valentine Properties Assocs., LP v. U.S. Dept. of Housing and Urban Dev.*, 785 F.Supp.2d 357, 372 (S.D.N.Y. 2011) (collecting cases denying plaintiffs' attempts to raise unpleaded claims at the summary judgment stage); *Thomas v. Egan*, 1 Fed.Appx. 52, 54, 2001 WL 30667 at *1 (2d Cir. Jan. 10, 2001) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim. Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion.") (citations omitted).

Plaintiff's counsel acts as though she can pursue any possible claim under Title VII, despite the absence of any supporting factual allegations in the Complaint, merely because the "Title VII" box on the form complaint is checked. Clearly, that is not the law. *See, DiProjetto v. Morris Protective*

---

[7]*See*, Pl. Memo of Law [#26] at p. 5-6 (Arguing that Travis should have been disciplined because she was "involved in a physical altercation at the store on the same date as the Plaintiff's alleged incident [and] was not disciplined at all.") (emphasis in original).

[8]Contrary to Ms. Agola's argument, a Complaint is not amended by making new allegations at deposition. *See, e.g., Edwards v. Bezio*, No. 9:08-CV-256 (LEK/RFT), 2010 WL 681369 at *3, n. 4 (N.D.N.Y. Feb. 24, 2010) ("A plaintiff may not amend his complaint by making new allegations in his deposition, or in response to a motion for summary judgment.").

*Serv.*, 489 F.Supp.2d 305, 308–309 (W.D.N.Y.2007) (Merely checking a box on a form discrimination complaint is not sufficient to state a plausible claim under Title VII or the ADA), *affirmed*, 306 Fed. Appx. 687, 2009 WL 102751 (2d Cir. Jan. 15, 2009).

It is bad enough that Plaintiff is attempting to raise these unpleaded claims now, after passing up the opportunity to amend the Complaint. Even worse is that these claims, even if they were pleaded, are completely frivolous. For example, Plaintiff's purported racial discrimination is based only on his self-serving opinion that because his supervisors were white, they could not be "sensitive to the needs of black employees." Similarly, the alleged instance of religious discrimination claim is based on the fact that on one occasion, after accepting a job that obviously required him to work with all kinds of meat, Plaintiff stated that he could not touch pork.[9] Moreover, his purported gender discrimination claim is based on his belief that he should not have been terminated for aggressively and rudely confronting his supervisors for no good reason, since a female employee, who was assaulted and thrown through the front door of the store by her boyfriend, and who was therefore obviously not similarly situated, was not disciplined.

To summarize, the only claim that is properly before the Court is a discrimination claim under the ADA. Any other claim that Plaintiff is now attempting to assert is unpleaded and therefore not part of this action.

Decision and Order [#30] at pp. 14-15. The Court continued:

### *Sanctions*

For the reasons discussed above, the Court finds it necessary to raise the issue of sanctions *sua sponte*. While more than one aspect of Ms. Agola's representation in this case could be sanctionable, the Court will limit itself to the most obvious, which is her attempt to raise an unpleaded and unmeritorious gender discrimination claim at the summary judgment stage. Specifically, in response to Defendant's summary judgment motion, Ms. Agola stated to the Court that "Plaintiff has *clearly* also *alleged* discrimination based

---

[9]This alleged instance of religious discrimination was not even raised, much less exhausted, at the administrative level.

on gender." Pl. Memo of Law [#26] at p. 3.  However, on that point, the issue before the Court was not what Plaintiff might have alleged in a prior administrative complaint, or what he might have alleged in his deposition.  The issue was whether a gender discrimination claim was pleaded in this action, and it clearly was not.  Therefore, Ms. Agola's statements on this point were misrepresentations to the Court.

Ms. Agola's conduct in this regard is not atypical of her practice before this Court.  She has in the past pursued meritless claims, making baseless arguments to avoid summary judgment. *See, e.g., Rojas v. Roman Catholic Diocese of Rochester*, 783 F.Supp.2d 381 (W.D.N.Y. 2010) (Disregarding sham evidence submitted by Agola in opposition to summary judgment), *affirmed*, 660 F.3d 98 (2d Cir. 2011); *Colombo v. East Irondequoit Cent. Sch.*, No. 07–CV–6270 CJS, 2010 WL 6004378 at *10, n. 8 (W.D.N.Y. Dec. 17, 2010) ("Factual misstatements are a recurring problem with Ms. Agola's submissions to the Court.") (collecting cases); *Gilderhus v. Concentrix Corp.*, 825 F.Supp.2d 414, 417, n.2 (W.D.N.Y. 2011) (Referring to Agola's "feeble attempt" to avoid summary judgment by mis-characterizing deposition testimony).

Accordingly, the Court will require  Ms. Agola to show cause in writing why sanctions should not be imposed on her for violating Federal Rule 11(B)(1),(2),(3) and (4), and 28 U.S.C. § 1927,[10] for acting in bad faith in connection with her argument that Plaintiff had a meritorious gender discrimination claim.[11] *See, In re Pennie & Edmonds LLP*, 323 F.3d 86, 89-91 (2d Cir. 2003) (Holding that court must apply "bad faith" standard where it

---

[10]28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

[11]When Ms. Agola filed her notice of appearance after Plaintiff had filed the Complaint *pro se*, she did not file a separate Rule 11 certification.  However, such fact does not insulate her from Rule 11 sanctions. *See, Turner v. Sungard Bus. Sys., Inc.*, 91 F.3d 1418, 1421 (11th Cir. 1996) ("[I]t is well established that Rule 11 applies to all papers filed in a suit.  The district court found that "from the moment he appeared on the plaintiff's behalf, Penick [plaintiff's attorney] had actual knowledge that there was no merit to the plaintiff's assertions, or, at the very least, he consciously decided not to inquire of the merits." That the only "paper" Penick signed and submitted to the court in prosecuting Plaintiff's claim was the notice of appearance is unimportant. By appearing in this case, Penick affirmed to the court that the case had arguable merit. In this sense, it was as if Penick had refiled the complaint.").

raises Rule 11 sanction issue *sua sponte*, when attorney no longer has opportunity to withdraw the offending submission); *see also, Arclightz and Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 Civ.10135(SAS), 2003 WL 22434153 at *7 (S.D.N.Y. Oct. 24, 2003) ("Bad faith conduct may include pursuing frivolous contentions, frivolous motions,or intentionally dilatory conduct.") (citations and internal quotation marks omitted).

*Id*. at pp. 22-24.

On August 17, 2012, Ms. Agola filed a 69-page response [#32] to the Order to Show Cause. Many of the documents pertain to administrative proceedings that took place outside of this action. The Court observes that to the extent that those documents mention alleged gender discrimination, they were not part of the Complaint in this action. Significantly, Plaintiff did attach parts of the administrative record to his Complaint, but only those portions pertaining to disability discrimination. Ms. Agola also submitted portions of Plaintiff's deposition transcript, but again, to the extent that Plaintiff may have alluded to gender discrimination at his deposition, Ms. Agola never amended the Complaint to raise such a claim.

Apart from those documents, Ms. Agola's response to the Order to Show Cause consists primarily of her own five-page declaration [#32].[12] Ms. Agola defends her actions by arguing that Mr. Muhammad had included allegations of gender discrimination *in documents that he filed with the NYSDHR*, and that such fact necessarily resulted in a

---

[12]One might assume that when responding to a U.S. District Judge's *sua sponte* Rule 11 Order to Show Cause, an attorney might be particularly careful. Not Ms. Agola. Instead, Ms. Agola's declaration begins, typically enough for her, with an example of her careless cut-and-paste editing, upon which this Court has commented many times: "I make this Declaration in opposition to Defendant's Motion for Summary Judgment in the above captioned matter." *Id*., [#32] at ¶ 2. Of course, the Court had already granted Defendant's summary judgment motion weeks earlier, and Ms. Agola had, in the interim, filed a Notice of Appeal. Therefore, it should have been obvious to her that her declaration had nothing to do with opposing Defendant's summary judgment motion.

gender discrimination claim being "pled" *in this action*, even though it was not included in the Complaint [#1] filed in this action. Specifically, Ms. Agola states, in pertinent part:

> These allegations were sufficient to have put the EEOC on notice of a potential sex discrimination claim that was 'reasonably related' to his retaliation claim pled in his federal complaint, even though on his charge of discrimination there was no 'check' in the box marked 'Sex.'

> That is because under well settled Second Circuit precedent, 'it is the substance of the charge, and not the label that controls.' *Mathirampuzha v. Potter*, 548 F.3d 70 (2d Cir. 2008).

> In his federal pro se complaint filed on February 10, 2010, the Plaintiff checked the box entitled 'Title VII' which includes 'race, color, gender, religion, national origin.'

> Plaintiff also checked the box that read: 'Retaliation because I complained about discrimination or harassment directed toward me.'

> Plaintiff annexed a 'Notice of Intent to Sue for Discrimination' where ¶ 4 he alleges, inter alia: 'The plaintiff also alleges that Wal-mart Co. was discriminatory with respect to the New York State Executive Law . . . [sic] Plaintiff also incorporated by reference his underlying NYSDHR and EEOC Notice of Right to Sue to his federal pro se complaint.[13]

> Because the factual underpinnings of a gender discrimination claim were presented in the complaint made to the NYSDHR, they were administratively exhausted, and allow for 'loose pleading' under well settled Second Circuit precedent. *Williams v. New York City Housing Authority*, 458 F.3d 67 (2d Cir. 2006).

> Accordingly, it was objectively reasonable for the Plaintiff to believe that he

---

[13]This assertion is unsubstantiated, since the Complaint itself does not indicate that it is incorporating these documents by reference. Actually, since Muhammad attached administrative materials to the Complaint [#1] that pertain only to disability discrimination, there would be no reason for anyone to suspect that he was also intending to pursue an unpleaded gender discrimination claim based on administrative materials that were not attached to the Complaint.

had set forth claims for gender discrimination under Title VII and the New York State Human Rights Law, Executive Law § 290 et seq.[14]

*\*\**

Your Declarant is quixotically[15] subject to sanctions under Rule 11 for raising issues that were indeed raised administratively by a pro se Plaintiff, were incorporated by reference to a pro se federal complaint, were duly addressed at the Plaintiff's deposition, and were briefed substantively by opposing counsel in any event.[16]

In light of the Second Circuit precedent which allows for 'loose pleading' for claims raised below at the administrative level, and for the reasons set forth herein, it is respectfully requested that the Court decline to issue sanctions for doing that which is objectively reasonable under Second Circuit precedent.

Id. at ¶ ¶ 5-12, 16-17 (citations omitted).  Agola further argues that other attorneys have committed "far more egregious conduct." *Id*. at ¶ 13.

As will be discussed further below, Ms. Agola's understanding of "loose pleading" in the Title VII context is entirely incorrect.  Nevertheless, it should be noted that the supposed "gender discrimination claim" in Plaintiff's administrative complaint, which Agola maintains put the EEOC on notice of a gender discrimination claim, is the following sentence: "Associate named Chassidy got in physical altercation same night with boyfriend on Walmart property she got suspended not terminated   manual of Walmart fighting automatic

---

[14]The Court disagrees that it would have been reasonable for Mr. Muhammad to believe that, since the Complaint [#1] that he filed in this action did not mention gender discrimination.  Moreover, it is irrelevant what the *pro se* Plaintiff may have thought when he commenced this action.  The issue before the Court is whether Agola misrepresented to the Court that the Complaint in this action contained a gender discrimination claim.

[15]The word "quixotic" means: "1: foolishly impractical especially in the pursuit of ideals; especially: marked by rash lofty romantic ideas or extravagantly chivalrous action. 2: Capricious, unpredictable." http://www.merriam-webster.com/dictionary/quixotic

[16]Here, Agola attempts to suggest that Defendant's counsel was aware that she was pursuing a gender discrimination claim.  However, Defendant's counsel addressed the issue in a reply memo only after Agola attempted to defeat summary judgment based on the unpleaded claim.

termination not her I was fired." [sic]  Notably, in that same administrative complaint, when asked to specify the grounds for his complaint, Plaintiff circled "disability" and "race," but did not circle "sex."   Accordingly, even if the administrative complaint was incorporated by reference, which it was not, or even if the administrative complaint was attached to the Complaint [#1] in this action, which it was not, it is not likely that any reasonable person reading the Complaint [#1] would understand that Muhammad was attempting to assert a gender discrimination claim.

In any event, on October 23, 2012, after the deadline imposed by the Court to respond to the Order to Show Cause, Ms. Agola filed a "Supplemental Declaration" [#36] from Mr. Muhammad.  The content of the declaration only further illustrates Ms. Agola's misunderstanding of the pleading standards in federal court.  That is, the declaration offers that when Mr. Muhammad filed his administrative complaint and his Complaint [#1] in this action, *he believed* that he was asserting a gender discrimination claim.  Curiously, Mr. Muhammad fails to explain why, if that were true, he failed to check the "sex discrimination" box on either complaint, or why he failed to include any factual allegation of sex discrimination in the Complaint [#1] in this action, despite having been directed to set forth the factual basis for his claims.[17]  But in any event, Mr. Muhammad's subjective beliefs are irrelevant to whether the Complaint [#1] actually pleaded a gender discrimination claim.

---

[17]The form complaint that Muhammad used contained the following direction: "19. State here as briefly as possible the facts of your case.  Describe how each defendant is involved, including dates and places.  Do not give any legal arguments or cite any cases or statutes.  If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph."  In response, Muhammad stated: "Was forced to work in a position of which continually caused my preexisting injury to become more exastribated [sic] than usual."

On October 25, 2012, the Court heard oral argument on the Order to Show Cause. Ms. Agola did not appear in person. Instead, her associate Steven Laprade appeared. At that time, the Court carefully explained the concept of "loose pleading" in Title VII actions, and why Ms. Agola's legal argument essentially turned the concept on its head, since she was insisting that a Title VII complaint in federal court does not need to specifically set forth a gender discrimination claim, as long as the underlying administrative complaint put the EEOC on notice of such a claim. The Court then asked Mr. Laprade whether the Complaint [#1] in this action pleaded a gender discrimination claim. Twice, Mr. Laprade evaded the question by responding only that "the box [for gender discrimination] was not checked" on the Complaint [#1]. However, when the Court persisted, and asked, "So, it was not pleaded, is that correct?", Laprade responded, "Yes." *See*, As Yet Untranscribed Audio Recording of Oral Argument, October 25, 2012, at 3:54:23.

Mr. Laprade's recognition, at oral argument, of the fact that a gender discrimination claim is not pleaded in the Complaint [#1] in this action, was really not important to the factual record, since the fact was obvious in any event. Put another way, Mr. Laprade could not plausibly deny the fact that no gender discrimination claim was pleaded in the Complaint in this action, since the Complaint is devoid of any such claim. The Court was therefore astonished to learn that a mere six days after such oral argument, Ms. Agola told the Honorable Richard Arcara, United States District Judge, that the *Muhammad* Complaint [#1] in fact pleaded a gender discrimination claim. Specifically, on October 31, 2012, in the case of *Rankin v. City of Niagara Falls*, 1:09-cv-00974-RJA-JJM, in her Objections to a Report and Recommendation of the Honorable Jeremiah McCarthy, United States Magistrate Judge, recommending that she be sanctioned under Rule 11 for making misrepresentations

17

to Judge McCarthy, Ms. Agola, through her attorney, stated, in pertinent part:

> In *Muhammad v. Wal-Mart Stores*, Dock. No. 10-cv-6074, 2012 WL 3201668, at *11 (W.D.N.Y. 2011), Judge Siragusa admonishes Ms. Agola, who handled the matter *pro bono*, for raising a purportedly baseless claim that her client had actually raised in his *pro se* Complaint, though not formally. In the factual allegations of the Complaint, the pro se plaintiff made factual allegations of sex discrimination, but failed to check off 'sex' in the paper work.[18] In short, there is no question that the EEOC was placed on notice of the substantive claim. Thus, Judge Siragusa's opinion that Ms. Agola made a 'baseless argument to avoid summary judgment' should be re-evaluated.

*Rankin v. City of Niagara Falls*, 09-CV-00974, Objections [#105] at p. 16, footnote 9. This statement is significant for at least two reasons. First, it shows that Ms. Agola persists in arguing, incorrectly, that the relevant issue here is whether the EEOC was put on notice of a potential gender discrimination claim in the administrative complaint. And second, it shows that Ms. Agola continues to insist, incorrectly, that the Complaint [#1] contains factual allegations of gender discrimination. Consequently, despite everything, Ms. Agola persists in maintaining that she was correct in raising gender discrimination in opposition to Wal-Mart's summary judgment motion, and in representing to this Court that the Complaint [#1] "clearly" contained such a claim.

DISCUSSION

The issue before the Court is whether it should sanction Ms. Agola, under FRCP 11(B)(1),(2),(3) and (4), and 28 U.S.C. § 1927, for acting in subjective bad faith in connection with her argument that Plaintiff had a meritorious gender discrimination claim. *See, In re Pennie & Edmonds LLP*, 323 F.3d 86, 89-91 (2d Cir. 2003) (Holding that court

---

[18]This statement is indisputably false, as the Complaint [#1] contains no such factual allegations.

must apply "bad faith" standard where it raises Rule 11 sanction issue *sua sponte*, when attorney no longer has opportunity to withdraw the offending submission); *see also, Arclightz and Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 Civ.10135(SAS), 2003 WL 22434153 at *7 (S.D.N.Y. Oct. 24, 2003) ("Bad faith conduct may include pursuing frivolous contentions, frivolous motions,or intentionally dilatory conduct.") (citations and internal quotation marks omitted). Here, the Court finds that Ms. Agola should be sanctioned, since she made the misrepresentations discussed above to this Court, in subjective bad faith, in an attempt to avoid summary judgment.

Ms. Agola insists that it was proper for her to argue a gender discrimination claim in opposition to summary judgment, because of the concept of "loose pleading" She is incorrect. "Loose pleading" before the EEOC is permitted, because it is understood that EEOC complaints are usually filed *pro se*.

However, this is not a loose pleading situation. The "loose pleading" principle pertains to exhaustion of administrative remedies, which is not an issue in this case. A loose pleading situation would arise if Mr. Muhammad had pleaded a gender discrimination claim <u>in this action</u>, but had not specifically included such a claim <u>in his EEOC Complaint</u>. *See, Deravin v. Kerik*, 335 F.3d 195, 200-201 (2d Cir. 2003).

Here, by contrast, we had the opposite situation. In this action, we had a Complaint [#1] which clearly failed to raise a gender discrimination claim. Nevertheless, Ms. Agola continues to argue that such a claim should be considered part of the Complaint [#1] in this action, since Plaintiff arguably alluded to gender in his EEOC Complaint. Ms. Agola therefore has the "loose pleading" principle entirely backward. *See*, Rule 11, Advisory

Committee Notes to the 1993 Amendments (Indicating that Rule 11 subjects "litigants to potential sanctions for insisting upon a position after it is no longer tenable;" here, Ms. Agola continues to make a legal argument that was never tenable).

The fact is that in this action, Plaintiff filed a Complaint which alleged discrimination based on disability only. There is no suggestion in the Complaint [#1] that Plaintiff was suing because of gender. None of the documents attached to the Complaint [#1] refer to gender. Nevertheless, Ms. Agola incorrectly states that a gender discrimination claim was "incorporated by reference" into this action. Agola Decl. ¶ 16.

In the Court's opinion, no attorney could have reviewed the Complaint [#1] in this action and concluded, in good faith, that it pleaded a claim of gender discrimination. Moreover, any competent attorney who intended to pursue a gender discrimination claim would have amended the Complaint to plead such a claim, which Ms. Agola did not do. Accordingly, the Court finds that Ms. Agola acted in subjective bad faith when she represented to the Court that the Complaint [#1] "clearly" asserted a gender discrimination claim.

As mentioned above, the Court makes this finding, based on the facts set forth above and on Ms. Agola's history in this Court and in the Second Circuit Court of Appeals.[19] This finding is further supported by Ms. Agola's frivolous legal argument in response to the Court's Order to Show Cause, and by her Objections submitted to Judge Arcara in the *Rankin* case, in which she refuses to concede the obvious fact that the Complaint [#1] in this action does not plead a gender discrimination claim.

---

[19] *See, In re Agola*, No. 10-90061-am, 2012 WL 2025389 (2d Cir. Jun. 6, 2012).

20

In deciding upon an appropriate sanction, the Court takes into account the fact that Ms. Agola does not appear to be the slightest bit contrite about her misrepresentations to the Court. To the contrary, Ms. Agola characterizes the Court's view on this point as "quixotic," and complains to Judge Arcara that this Court is being unfair to her, while misstating the facts of this case to him. Ms. Agola's lack of candor or contrition is especially troubling given the number of times that this Court has admonished her over the years for committing similar infractions. As demonstrated over a period of years in numerous cases, Ms. Agola's approach to motion practice is to avoid dismissal at all costs, even if that means misrepresenting the facts or the law. Unfortunately, since Ms. Agola's cases very often lack the merit needed to legitimately survive a dispositive motion, situations such as this have become commonplace.

Having considered all of the relevant factors under Rule 11 and 28 U.S.C. § 1927, the Court imposes the following sanctions on Ms. Agola. First, Ms. Agola is formally reprimanded for making a misrepresentation to the Court. In addition, Ms. Agola is required to pay a monetary sanction of seven thousand, five hundred dollars ($7,500.00) into Court. The Court imposes this sanction because lesser sanctions previously imposed have failed to deter this type of conduct.[20]

---

[20] The Court previously sanctioned Ms. Agola in the amount of five thousand dollars ($5,000.00). *See, Geiger v. Town of Greece*, 2008 WL 728471 (W.D.N.Y. Mar. 18, 2008) ("Plaintiff's counsel argue[s] that Rule 11 sanctions are not warranted because 'the parties to the settlement agreement [Assurance] did not intend it to be an admission of guilt.' (Pl. Memo of Law [# 33] at 4). However, this argument has no merit, since the Assurance agreement, which was accurately described by the Attorney General's press release, is clearly an admission of guilt by Mr. Geiger. Nevertheless, despite the clear wording of the Assurance, Plaintiff's counsel [Ms. Agola] obstinately refuse[s] to admit that the Assurance says what it says. In short, the Court finds that Plaintiff's counsel violated Rule 11(b)(2) & (3) by pursuing a frivolous defamation claim.").

CONCLUSION

Ms. Agola is hereby sanctioned pursuant to FRCP 11(c)(3) and and 28 U.S.C. § 1927. Ms. Agola is reprimanded for making misrepresentations to the Court as discussed above. Ms. Agola is further required to pay a monetary sanction of seven thousand, five hundred dollars ($7,500.00) into Court within thirty days of the issuance of this Decision and Order.

SO ORDERED.

Dated:   November 27, 2012
         Rochester, New York

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge